# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DWAYNE MARTIN,

        Defendant.

2:18-cr-00029-JCM-VCF

**ORDER**

MOTION TO SUPPRESS [ECF NO. 30]; MOTION TO STRIKE [ECF NO. 55]; MOTION FOR LEAVE TO FILE A REPLY BRIEF [ECF NO. 57]

      Before the Court are defendant Dwayne Martin's (1) motion to suppress (ECF No. 30) and his (2) motion for leave to file a reply to the government's closing brief (ECF No. 57); and (3) the government's motion to strike (ECF No. 550). All the motions are fully briefed. (ECF Nos. 36, 39, 50, 51, 54, 55, 56, 57, 57-1). On December 16, 2019, the Court held an evidentiary hearing on the motion to suppress[1] (ECF No. 43). The motion to suppress and the motion to strike is denied. The motion for leave to file a reply brief is granted.

//

---

[1] At the hearing, the defendant's counsel asked the Court to allow closing briefing in lieu of closing statements (ECF No. 50). The Court granted the request and ordered that there would be no reply. (ECF No. 43). On January 24, 2020, the defendant filed his 33-page closing brief. (ECF No. 51). On February 14, the government filed its closing brief (ECF No. 54) and filed a motion to strike the oversize brief (ECF No. 55 at 1). The defendant filed a response to the motion to strike (ECF No. 56) and attached a reformatted version of the brief (ECF No. 56-1). The defendant then filed a motion for leave to file a reply brief in response to the government's closing brief (ECF No. 57) and attached a copy of his proposed reply (ECF No. 57-1).

**I.      Background**

The government charged defendant with felon in possession of a firearm in violation of 18 USC Sections 922(g)(1) and 924(a)(2). (ECF No. 1). According to Officer William Hutchings's September 7, 2017 police report, Kiera Washington, allegedly the defendant's ex-girlfriend who was pregnant, called 911 to report that Martin had punched her 20 times. (ECF No. 30-1 at 2). When the police arrived, Martin drove away. (*Id.*) Officer Hutchings notes in his report that Washington had a scratch on her face and it appeared her hair extensions had been pulled out, but Officer Hutchings also noted that Washington, "was inconsistent with her story and changed what she said a few times." (*Id.*). The next day, on September 8, 2017, Washington called 911 again; there are three calls between Washington and 911 on this day. (ECF No.50 at 16). At the hearing, the Court heard representations from the parties regarding the three calls and there is an issue of fact regarding whether Washington hung up and called back, if the call dropped, or whether there was a struggle prior to the disconnection. (ECF No. 50 at 16-17, 51-53, 78). During one of the 911 calls, Washington reported that Martin was outside her apartment with a gun and threatened to kill her because of her call to the police the day before. (ECF No. 30-3 at 2). When the police arrived, Martin was not there. (*Id.*) Officers used "open source information" to identify an apartment where Martin might live. (*Id.*)

When officers arrived at the apartment, the defendant's mother, Cheryl Cormack[2], answered the door. (*Id.*) The police allege in their report that Cormack told them Martin was in the apartment and gave officers permission to enter the apartment; police observed Martin walk out of his bedroom and took him in to custody. (*Id.*) Police obtained a search warrant, "due to the circumstances involving a firearm" as reported by Washington. (*Id.*) After obtaining a warrant, the police searched the bedroom that Martin had walked out of, that Cormack identified as his room, and they discovered the gun inside

---

[2] There is also a factual dispute regarding whether Cormack is Martin's mother or his aunt: Cormack identified herself as Martin's mother to the police, but she may be his biological aunt. (ECF No. 30 at 3).

the room. (*Id.*)

Defendant argues in support of his motion to suppress that the police intimidated Cormack when she answered the door because they had their guns drawn, that her consent to enter the apartment was not voluntary, and that police illegally arrested Martin in his home without an arrest warrant. (ECF No. 30 at 3). Defendant also argues that the affidavit to obtain a search warrant does not establish probable cause because Detective Eric Stafford lied and made material omissions, such as the fact that Detective Stafford omitted Officer Hutchings's statement from the day prior regarding Washington's story being "inconsistent". (ECF No. 30-4 at 3-4). At the hearing, defendant also argued that Detective Stafford lied about hearing a struggle on one of Washington's 911 calls. (ECF No. 50 at 16).

The government argues in its response that the police's arrest of Martin inside his home without an arrest warrant was legal because the body cam footage shows that the defendant's mother's consent for the police to enter her home was freely and voluntarily given because (1) the police had lowered their guns as soon as she opened the door, and (2) she told the police to "come on in" and waived them inside. (ECF No. 36 at 5). The government also argues that Detective Stafford was not present when the officers entered the apartment to arrest the defendant, and that any omissions or slight inaccuracies are not deliberate or reckless (*Id.* at 12).

Regarding Washington's credibility, the government points out that the police did corroborate evidence of the assault by recording the physical marks on Washington's face, despite the comment that her story was inconsistent (the government says changed stories are typical of victims of domestic violence[3]). (ECF No. 36 at 13). The government also points out that citizen witnesses are usually

---

[3] The government states that Washington has since given birth to Martin's child and she submitted a written statement where she recants her allegations of assault, but that courts have found that such recantations are not unusual in domestic violence cases. See, *e.g., United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012) (noting "the district court was entitled to consider that such a recantation is not unusual in domestic violence cases"); *United States v. Julius*, No. 2:07-CR-316-MHT-SRW, 2015 WL 9412546, at 2 (M.D. Ala. Dec. 22, 2015) (noting it "is not uncommon for victims of domestic violence to recant their prior truthful statements [ ]").

3

presumed credible, and that the police corroborated Washington's story: they listened to the recording of the 911 call and heard what sounded like a struggle prior to disconnection, and they talked to an adjacent tenant who had heard a loud argument between a man and a woman at the time Washington reported Martin threated her with a gun at her apartment. (*Id*. at 14). The parties played the 911 recording at the hearing, including the moment of the potential struggle, and Stafford testified regarding his impressions of the recording and of Washington. (ECF No. 50 at 51). The government argues that Detective Stafford had no reason to believe at the time that Washington had credibility issues. (*Id.* at 13).

Martin argues in reply that the consent exception (regarding Cormack's consent to enter her home) does not apply given that there were five officers with drawn guns surrounding her home and that Martin's arrest was illegal. (ECF No. 39 at 2). Martin also argues that Detective Stafford's omission of the Officer Hutchings's prior report that Washington had changed her story is material regarding the finding of probable cause. (*Id*. at 5).

At the hearing on the motion to suppress, the defendant raised a new argument that the officers should not have knocked on the defendant's mother's door to talk to her. (ECF No. 50 at 17-18). In the defendant's closing brief, he included additional arguments regarding details defendant asserts that Detective Stafford should have been included in the warrant affidavit, such as allegations regarding Washington's credibility. (ECF No. 51). Defendant also elaborated on his new argument that the police illegally "knocked and talked" at Cormack's apartment[4] because the police intended to arrest Martin. (*Id.* at 20). The defendant also included an updated warrant affidavit that includes what defendant believes are material omissions and strikes what defendant believes are misrepresentations and evidence based on the allegedly illegal knock and talk. (*Id.* at 30-31).

The government argues in its closing brief that the defendant has not met his burden to show that

---

[4] The defendant argues that he lived at both the apartment with Cormack and at the apartment with Washington. (ECF Nos. 30 at 3 and 51 at 30-31).

4

police obtained the warrant through deception and that the knock and talk was proper because the police were investigating a potentially armed suspect at large. (ECF No. 54). The defendant argues in his reply brief that the area in front of Cormack's apartment is within the home's curtilage which he alleges supports his argument that the the knock and talk was illegal. (ECF No. 57-1).

**II.    Discussion**

    **a. Motion to Suppress**

        **i. Knock and Talk**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. "The 'knock and talk' exception to the warrant requirement permits law enforcement officers to encroach upon the curtilage of a home for the purpose of asking questions of the occupants." *United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016). "An officer does not violate the Fourth Amendment by approaching a home at a reasonable hour and knocking on the front door with the intent merely to ask the resident questions, even if the officer has probable cause to arrest the resident." *Id.* "In the typical case, if the police do not have a warrant they may 'approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.'" *Id.,* citing to *Fla. v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013).

The defendant relies on *Lundin* for the proposition that the police should not have knocked on his mother's door. *Lundin*, 817 F.3d at 1151. In *Lundin*, the Ninth Circuit found that the knock and talk exception did not apply when the police knocked on the defendant's door at 4:00 am (an unreasonable time) with the intent to arrest (rather than question) him. The defendant relies heavily on *Lundin* for the proposition that the police approached Cormack's apartment for the sole proposition of arresting Martin.

The front of the apartment complex door is likely the curtilage of the home[5] given that it is an upstairs apartment with railing and a welcome mat. Government Ex. 1 at 26:43–27:40; Government Ex. 5 at 26:04. The police knocked on Cormack's apartment door at a reasonable time, around 11:00 am, a time that is customarily a reasonable time to receive visitors. The Court finds that the police demonstrated that they intended to ask questions when they knocked on the door because the police were investigating Martin's location and they did not know if Martin lived at Cormack's apartment, as conceded by the defendant in his supplemental brief. (ECF No. 50 at 24). When briefing his fellow officers, the officer in command stated that they would conduct a knock and talk at Cormack's apartment "to identify who's in there," and continued that "if by some miracle" they were to see the defendant through the open door, the officers would "go from there." This statement indicates that the police had an investigatory purpose for knocking on Cormack's door and did not knock for the sole purpose of arresting Martin. When Cormack answered the door, the police questioned Cormack regarding Martin. Cormack told the police Martin lived with her and was inside.

### ii. Officer's Entry into the Home

"[C]onsent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974). To determine whether consent is given voluntarily, courts look to the totality of the circumstances. *Schnecloth v. Bustamonte*, 412 U.S. 218, 228 (1973). "[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Segura v. United States*, 468 U.S. 796, 815 (1984).

---

[5] *Florida v. Jardines*, 569 U.S. 1, 7 (2013) (curtilage is area "to which the activity of home life extends") *citing Oliver v. United States*, 466 U.S. 170, 182 n.12 (1984); Compare*: United States v. Vaneaton*, 49 F.3d 1423, 1425-26 (9th Cir. 1995) (officers in common area knocking on door of motel room did not violate Fourth Amendment when arresting defendant who came to the door), *discussed in Lundin*, 817 F.3d at 1160 ("Unlike the officers in *Jardines* and in this case, the officers in *Vaneaton* were standing in the common space of a motel when they knocked, rather than in the curtilage of a home. We therefore have no need to overrule *Vaneaton*.")

The Court considered the video evidence: when Cormack opened the door, the officers immediately lowered their guns and questioned Cormack. The Court finds that Cormack voluntarily told the police that Martin was in his bedroom. The Court notes that Cormack turned her back to the police to walk towards the bedroom. Gov.'s Ex. 1 at 27:45-47. When Officer Wright asked, "ma'am, can we come in" Cormack immediately stated, "come on in" and waved the officers inside. *Id.* The Court finds that in the totality of the circumstances, Cormack's consent for the police to enter her apartment was voluntary.

### iii. **The Search Warrant**

When determining whether a warrant is supported by probable cause, the standard is whether, "based on common sense considerations, there was a fair probability that contraband or evidence of a crime [would] be found in a particular place." *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014). A probable cause determination will be upheld if, after reviewing the contents of the affidavit, the court concludes the issuing judge had a "substantial basis" for that determination. *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984). When a Defendant claims a warrant was obtained through deception, he bears the burden of proving that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Ruiz*, 758 F.3d at 1148.

"Allegations of negligence or innocent mistake are insufficient" for the reviewing court to strike or supplement the affidavit. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant is entitled to a *Franks* hearing:

> Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, U.S. Const. amend. IV requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to

> establish probable cause, the search warrant must be voided and the fruits of the
> search excluded to the same extent as if probable cause was lacking on the face
> of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 2676 (1978). Information in criminal investigations, however, must "sometimes must be garnered hastily." *Id.* at 165.

Detective Stafford testified at the hearing that he arrived on the scene to draft and serve a telephonic search warrant. (ECF No. 50 at 24). Detective Stafford testified that he talked to the police who had been on the scene, he listened to the 911 calls, and he interviewed Washington. (*Id.* at 28). Detective Stafford testified that when he interviewed Washington he believed her story because, "[s]he was just able to describe the incident well enough that it sounded -- it didn't sound like it was fabricated to me." *Id.* at 31. Detective Stafford also testified that he listened to the 911 calls and it sounded like there was a struggle before Washington hung up because it sounded like "the phone's being jostled around" and "[w]hen dispatch calls her back…she sounds to be crying…[she] sounds really disturbed about what just happened." *Id*. at 33.

Detective Stafford also testified that he did not have time to read the police report from the day prior or watch the police officer's body cam footage because, "[w]e had a residence frozen, we had a vehicle frozen, we had people that didn't have access to their home at that time, I had a suspect in custody, I had a witness to identify, and we had a -- we had our hands full with the investigation that we had in front of us at the time." *Id.* at 32.

The Court finds that Detective Stafford consistently and credibly testified regarding his impressions of Washington and he credibly testified that he worked quickly to obtain a warrant. The Court finds that Detective Stafford did not deliberately or recklessly make any false statements or material omissions. For example, the omission of the police report from the day prior is not material to a finding of probable cause because the report also states that the officers observed Martin flee the scene, and they observed physical evidence of violence, such as the scratches and pulled out hair, despite the comment that Washington's story was inconsistent. Detective Stafford credibly testified that he did not

8

have time to read the police report from the day prior. Detective Stafford also testified that he interviewed the victim and he found Washington's new allegations, that Martin threatened her with a gun and that she was fearful of him, to be credible. The Court finds that warrant was valid because the defendant has not met his burden to show that Detective Stafford obtained the warrant through deception, either knowingly and intentionally, or with reckless disregard for the truth.

### b. The Motion to Strike and the Motion for Leave to File a Reply

The Court denies the motion to strike because the defendant resubmitted his brief in a different font to show he was within the page limits permitted by the local rules. The public policy of deciding cases on the merits weighed against striking the defendant's closing statement. For the same reason, the Court grants the defendant's request for leave to file his reply brief (attached at 57-1). The Court considered the defendant's arguments in the reply brief, even though the Court initially ordered that there would be no reply.

### III. Conclusion

ACCORDINGLY,

IT IS ORDERED that defendant Dwayne Martin's motion to suppress (ECF No. 30) is DENIED.

IT IS FURTHER ORDERED that defendant's motion for leave to file a reply to the government's closing brief (ECF No. 57) is GRANTED.

IT IS FURTHER ORDERED the government's motion to strike (ECF No. 550) is DENIED.

IT IS SO ORDERED.

DATED this 17th day of March 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE