UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>DWAYNE MARTIN,<br><br>Defendant(s). | Case No. 2:18-CR-29 JCM (VCF)<br><br>ORDER |

Presently before the court is Dwayne Martin's ("defendant") motion to suppress.  (ECF No. 30).  The United States of America ("the government") filed a response (ECF No. 36), to which defendant replied (ECF No. 39).  After a hearing on the motion (ECF Nos. 43; 50), defendant filed a supplemental brief (ECF No. 51).  The government responded (ECF No. 51), and defendant replied with leave of the court (ECF Nos. 57; 58).

Also before the court is Magistrate Judge Ferenbach's report and recommendation ("R&R") denying the motion to suppress.  (ECF No. 58).  Defendant objected (ECF No. 62), to which the government responded.  (ECF No. 63).

Also before the court is defendant's motion for leave to file a reply.  (ECF No. 64).  The government did not respond, and the time to do so has passed.

**I.     Background**

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (ECF No. 1).  Defendant moves to suppress all evidence obtained from a search of his bedroom, arguing that both his arrest and the search were unlawful and that the search warrant is invalid.  (ECF No. 30).  Although defendant does not object to Judge Ferenbach's factual findings, he challenges the probable cause determination, which is a

**James C. Mahan**
**U.S. District Judge**

factual inquiry. (ECF No. 62). Thus, the court finds it necessary to review the facts that led to defendant's arrest, the warrant application, and the resultant search.

On the evening of September 7, 2017, defendant's ex-girlfriend, Kiera Washington, repeatedly called 911 to report that defendant had assaulted her, including hitting her over twenty times . (ECF Nos. 30-1 at 4; 58 at 2). When police arrived at the scene shortly after 7:00 p.m., defendant fled and evaded the police. (ECF Nos. 30-1 at 4; 58 at 2; 62 at 1). Although there was some corroboration of Washington's story—she had a scratch on her face and her hair extensions had been pulled out—her injuries were not entirely consistent with being hit twenty times. (ECF No. 30-1 at 4). Officer Hutchins, who responded to the scene and prepared a report, indicated that Washington "was inconsistent with her story and changed what she said a few times." (ECF No. 28 at 2 (quoting ECF No. 30-1 at 4)). During the altercation, defendant broke Washington's phone and took the keys to her apartment. (ECF No. 30-1 at 4).

The next morning, Washington called 911 another three times. (ECF No. 58 at 2). At the evidentiary hearing in the instant motion, "the [c]ourt heard representations from the parties regarding the three calls and there is an issue of fact regarding whether Washington hung up and called back, if the call dropped, or whether there was a struggle prior to the disconnection." *Id.* (citing ECF No. 50 at 16–17, 51–53, 78). Washington told officers, and the September 8 police report indicates, as follows:

> Washington entered [her] apartment [at about 9:50 a.m.] and saw a gun on the counter described as a black gun, with a grey top and an extended clip. He came out of the room with all her clothes, getting ready to leave out of the front door. She tried getting her belongings back from [defendant] and [he] then punched [Washington] on her left forehead temple area with an open fist, causing visible swelling. [Washington] then called 911 and on the way out of the apartment [defendant] pointed a gun stating, "I will kill you, you police ass bitch, and I know where you and your mom live."

(ECF No. 30-3 at 2).

However, on the phone with 911, Washington indicated that her boyfriend, defendant, "was armed with a firearm outside the apartment." *Id.* Although officers noted the

inconsistencies, they—including Detective Stafford, the warrant affiant—believed her story. (ECF No. 58 at 8 (citing ECF No. 50 at 31)).

Washington indicated that defendant's friend or relative, Cheryl Cormack, lived at the nearby Tucumcari apartment complex. (ECF No. 62 at 3). When officers went to the complex, they found defendant's car there. *Id.* Officers consulted with the leasing office determined that Jimmy Cormack—who, according to law enforcement databases, defendant had previously lived with—lived in unit 2048. (ECF Nos. 62 at 3–4; 63 at 3).

The officers then conducted a purported "knock and talk" at unit 2048 to determine who lived in the apartment. (ECF Nos. 62 at 4; 63 at 3). The officers knocked on the door with their guns drawn, and Cheryl Cormack came to the door. (ECF No. 58 at 2). The officers lowered, but did not holster, their weapons, instructed Cormack to step outside, and asked if defendant was there. (ECF No. 62 at 4–5). Cormack said that he was and reentered the apartment. (ECF No. 63 at 3). Officers asked Cormack if they could enter the residence, and Cormack consented and waved them to come inside. *Id.* Defendant argues that Cormack did not, in fact, consent because *inter alia* the officers had their weapons drawn. (ECF No. 62 at 24–25).

Cormack went to the bedroom door and knocked for defendant to come out. (ECF Nos. 62 at 5; 63 at 4). When defendant stepped out of the bedroom, officers arrested him. (ECF No. 63 at 4). Officers then froze the apartment and had the residents—Jimmy and Cheryl Cormack and Dezarae Bolden-Lear, defendant's girlfriend—step outside. *Id.* All three residents indicated the defendant had not left the apartment that day or the night before. (ECF No. 62 at 7).

With the apartment frozen, officers investigated the incident. They interviewed Washington and conducted 16 knock and talks at Washington's apartment complex. *Id.* Only one knock and talk at Washington's apartment complex resulted in a witness indicating that he or she had heard an argument at the time of the 911 call, but not look to see who was involved and refused to give a statement.[1] *Id.* at 7–8.

---

[1] Defendant contends that the other fifteen apartment residents "denied hearing anything at all," but the record does not indicate whether the officers were able to make contact with anyone at these apartments or what their statements entailed if officers made contact. (ECF No. 62 at 27).

James C. Mahan
U.S. District Judge

- 3 -

Based on the information available to him, Detective Stafford applied for and received a telephonic search warrant. (ECF No. 63 at 4). Officers searched defendant's room and uncovered a firearm that matched the description Washington had given. *Id.*

Defendant moved to suppress the firearm, arguing that the warrant—and, consequently, the search—was invalid because (1) Cormack's consent to enter the apartment was not voluntary and, thus, invalid; (2) Detective Stafford did not tell the issuing judge about Washington's credibility issues; (3) Detective Stafford omitted information regarding the knock and talks at Washington's complex; and (4) the knock and talk at Cormack's apartment was improper because the officers intended to arrest defendant. (ECF Nos. 30; 39; 57; 62; 64). Judge Ferenbach recommends denying the motion (ECF No. 58), and defendant objects (ECF No. 62).

## II.    Legal Standard

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*.

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen (14) days from the date of service of the findings and recommendations. Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen (14) days after service of the motion.

## III.   Discussion

As an initial matter, the government did not oppose and the court grants defendant's motion for leave to file a reply. (ECF No. 64); *see* LCR 47-3. The court now considers defendant's motion to suppress, Judge Ferenbach's R&R, and defendant's objection.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

**James C. Mahan**
**U.S. District Judge**

- 4 -

The United States Supreme Court created the exclusionary rule as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011).

"A police officer has probable cause to conduct a search when the facts available to [him] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Fla. v. Harris*, 568 U.S. 237, 243 (2013) (citations, internal quotation marks, and brackets omitted). This is a "practical and common-sensical standard" that requires consideration of "the totality of the circumstances."[2] *Harris*, 568 U.S. at 243 (citations omitted). This standard "is not reducible to 'precise definition or quantification,'" and the Supreme Court has expressly "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 243–44 (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)).

There need only be "a fair probability that contraband or evidence of a crime will be found in a particular place" in order to support a finding of probable cause. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "[T]his 'substantial basis' standard of review embodie[s] the great deference that should be shown by reviewing courts to magistrates' probable cause determinations." *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984) (citation omitted).

However, this court does not exhibit the same deference to the magistrate judge's probable cause determination if there is a legal deficiency or error that requires the court to "correct" the warrant affidavit. *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014)

---

[2] Defendant notes that Washington retracted her statement in 2018. (ECF No. 62 at 9). But the court considers only the circumstances known to the officer at the time of the probable cause determination; the benefit of hindsight should not and does not alter this analysis. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be **the events which occurred leading up to** the stop or search . . . ." (emphasis added)); *cf. Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that "reasonableness" in the use-of-force context "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Thus, Washington's 2018 retraction is immaterial to the finding of probable cause in 2017.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  ("Thus, after excising the [illegally obtained evidence], [the court] must determine whether the
2  remaining untainted evidence was sufficient to support issuance of the warrant. [The court]
3  make[s] that determination without the usual deference owed to the magistrate's initial finding of
4  probable cause.") (citation omitted).  Here, defendant asserts that the warrant affidavit should be
5  corrected pursuant to *Franks v. Delaware*, in which the Supreme Court held as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

Defendant also argues that the warrant affidavit should be corrected to remove references to evidence or information obtained from the officers' "knock and talk" at Cormack's apartment. (ECF Nos. 51; 62).  Ordinarily, "[a] government agents conducts a 'search' within the meaning of the Fourth Amendment when the agent infringes an expectation of privacy that society is prepared to consider reasonable or occupies private property for the purpose of obtaining information."  *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (internal citations, quotation marks, and brackets omitted).  The Fourth Amendment protects the curtilage of a home from encroachment by law enforcement officers.  *Id.*

However, law enforcement officers may "knock and talk" without violating the Fourth Amendment because residents impliedly invite the public to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 1159 (quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)).  This implied license allows law enforcement officers to do "no more than any private citizen might do." *Jardines*, 569 U.S. at 8.  Thus, the knock and talk exception "is generally limited to the purpose of asking

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  questions of the occupants." *Lundin*, 817 F.3d at 1159 (citation and quotation marks omitted).
2  Accordingly, the Ninth Circuit expressly held that "[t]he 'knock and talk' exception to the
3  warrant requirement does not apply when officers encroach upon the curtilage of a home with
4  the intent to arrest the occupant." *Id.* at 1160 (discussion *Jardines*, 569 U.S. at 8–10).

5  The court first takes up the easier of the two questions: whether the omission of
6  Washington's credibility issues was material to the finding of probable cause and done in bad
7  faith. The court finds that it was not. Before explaining how the court comes to this conclusion,
8  the court emphasizes the relatively low standard for a finding of probable cause: "a *fair*
9  *probability* that contraband or evidence of a crime will be found in a particular place." *Gates*,
10  462 U.S. at 214.

11  As Judge Ferenbach noted in his R&R, Detective Stafford talked to the officers who had
12  been on the scene, listened to the 911 calls, and interviewed Washington. (ECF No. 58 at 8
13  (citing ECF No. 50 at 28)). Detective Stafford believed Washington's story in good faith and,
14  inconsistencies notwithstanding, testified that "[s]he was just able to describe the incident well
15  enough that it sounded— it didn't sound like it was fabricated to me." *Id.* (quoting ECF No. 50
16  at 31). Judge Ferenbach found, and the court agrees, that "Detective Stafford consistently and
17  credibly testified regarding his impressions of Washington and he credibly testified that he
18  worked quickly to obtain a warrant. The [c]ourt finds that Detective Stafford did not deliberately
19  or recklessly make any false statements or material omissions." *Id.*

20  Defendant has not shown that Detective Stafford omitted Washington's credibility issues
21  from the telephonic warrant application in bad faith or with reckless disregard for the truth.
22  Indeed, there was evidence to support Detective Stafford's conclusion and his warrant
23  application. Detective Stafford noted that the physical evidence—scratches and pulled out
24  hair—supported Washington's story. There was a car chase involving defendant's vehicle on
25  September 7. There was a witness who confirmed that there was an altercation at the time of the
26  911 calls on September 8. And Detective Stafford included mitigating evidence in his
27  application: "Three other residents at apartment 2048 were interviewed. All three said Martin
28  never left the residence today or last night." (ECF No. 62 at 9).

James C. Mahan
U.S. District Judge

- 7 -

At most, the omission of Washington's credibility issues would be negligent. But "[a]llegations of negligence or innocent mistake are insufficient" for the reviewing court to strike or supplement the affidavit. *Franks*, 438 U.S. at 171. Accordingly, the court find that the warrant affidavit need not be supplemented or corrected on the basis of omissions or falsity. The warrant application supports a finding of probable cause.

The court now turns to the much closer question: whether the knock and talk at Cormack's apartment was, in fact, a valid knock and talk. Although defendant's challenges to the warrant and search have evolved over the course of the briefing, the parties appear to agree that "Cormack's confirmation of the [d]efendant's presence within the apartment established the 'nexus' between Unit 2048 and the crime . . . ." (ECF No. 63 at 9 (citing ECF No. 51 (defendant's supplemental brief) at 23–25)).

Judge Ferenbach found and the government now argues that the officers knocked on the door for an investigatory purpose, i.e., to determine whether defendant was in the apartment. (ECF Nos. 58 at 6; 63 at 9). Defendant argues, not unjustifiably, that "*a* purpose" of the knock and talk was to arrest him, thereby invalidating the knock and talk entirely. (ECF No. 62 at 23 (emphasis in original)). However, the court finds that the officers did not run afoul of *Lundin* by knocking on the door with the intent of asking Cormack questions—chiefly, whether defendant lived there. The court's determination requires a close reading of the Ninth Circuit's holding in *Lundin*:

> The "knock and talk" exception to the warrant requirement does not apply when officers encroach upon the curtilage of a home with the intent to arrest the occupant. Just as "the background social norms that invite a visitor to the front door do not invite him there to conduct a search," those norms also do not invite a visitor there to arrest the occupant. **We do not hold that an officer may never conduct a "knock and talk" when he or she has probable cause to arrest a resident but does not have an arrest warrant.** An officer does not violate the Fourth Amendment by approaching a home at a reasonable hour and knocking on the front door **with the intent merely to ask the resident questions, even if the officer has probable cause to arrest the resident**.

*Lundin*, 817 F.3d at 1160.

**James C. Mahan**
**U.S. District Judge**

The Ninth Circuit expressly allowed for knock and talks when officers have probable cause to arrest the resident but the purpose of the knock and talk was to ask questions of the resident. The instant knock and talk falls is one such instance. In the pre-knock briefing, "[t]he officer in command . . . informed the officers that they would conduct a knock and talk at Unit 2048 'to identify who's in there,' and . . . 'if by some miracle' they were to see the defendant through the open door, the officers would 'go from there.'" (ECF No. 63 at 3).

Thus, Officers knew only that Jimmy and Cheryl Cormack lived in unit 2048. They intended to ask questions of the residents, the Cormacks, without any intent of arresting them. On the other hand, the officers had, at most, an intent to arrest defendant whenever they happened upon him. They did not know whether—and, at the time, could only suspect that—defendant was a resident at unit 2048. Thus, the primary purpose of the knock and talk was to investigate and ask Cormack, not defendant, questions. Whether the ultimate goal of their investigation was to arrest defendant is immaterial to the propriety of the knock and talk.

Finally, the court finds that Cormack's consent to enter the apartment resulted only in defendant's arrest, it did not produce any evidence that must be suppressed or stricken from the warrant. Instead, only the knock and talk resulted in the admission that defendant lived there.

Accordingly, the court finds that Detective Stafford's telephonic warrant application was proper and that it supports a determination of probable cause. Judge Ferenbach's R&R is adopted, and defendant's motion is denied.

IV. **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Judge Ferenbach's R&R (ECF No. 58) be, and the same hereby is, ADOPTED.

IT IS FURTHER ORDERED that defendant's motion to suppress (ECF No. 30) be, and the same hereby is, DENIED.

DATED May 15, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**